UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CATHERINE YOUELLS,

    Plaintiff,

vs.　　　　　　　　　　　　　　　　　Case No.: 4:20cv492/WS/ZCB

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This is a Social Security appeal under 42 U.S.C. § 405(g). Plaintiff Catherine Youells seeks judicial review of the Commissioner's decision denying her claims for period of disability, disability insurance benefits, and supplemental security income. (Doc. 18). For the reasons below, this matter should be remanded because substantial evidence does not support the Commissioner's finding that Plaintiff's medically determinable mental health conditions constituted a non-severe impairment.

    **I.**    **Procedural History**

    Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income, alleging an onset date of May 20, 2015. (Tr. 15, 264-

69, 270-79).[1] The Social Security Administration (SSA) denied her application at the initial level, as well as on reconsideration. (Tr. 15, 97-112, 113-130, 133-168). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on September 20, 2019. (Tr. 41-92). The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 15-32). The Appeals Council denied Plaintiff's request for review. (Tr. 1-6). The ALJ's decision stands as the final decision of the Commissioner. Plaintiff timely requested judicial review under 42 U.S.C. § 405(g). (Doc. 1). Plaintiff has filed a memorandum in support of her complaint, the Commissioner has responded, and Plaintiff has replied. (Docs. 18, 23, 25).

## II.   The Legal Framework

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA has established a five-step sequential process to determine whether a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

---

[1] Citations to the administrative record filed by the Commissioner are designated as "Tr." The page numbers cited herein are those found on the bottom right corner of each page of the transcript, rather than the page numbers that were assigned by the Court's electronic docketing system.

First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(1), 416.920(a)(4)(i). If so, the Commissioner will find that the claimant is not disabled. *Id.* §§ 404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner will determine the severity of the claimant's impairments or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). To be disabled, a claimant must have a "severe impairment," which is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c); 416.920(c).

Third, the Commissioner evaluates whether the claimant's severe impairment meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing"). *Id.* §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past relevant work. *Id.* §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work in the national economy. *Id.* §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The claimant bears the burden of proof at the first four steps. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant

establishes the first four steps, then the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy that the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, then the claimant must prove that she cannot perform the work identified by the Commissioner. *Goode*, 966 F.3d at 1279.

### III. The ALJ's Decision

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 20, 2015, the alleged onset date. (Tr. 17, Finding 2). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease; right eye depth perception; and obesity." (Tr. 17, Finding 3). Although the ALJ recognized that Plaintiff had medically determinable mental impairments, she found them to be non-severe. (Tr. 18).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20, Finding 4). Proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except that:

> the claimant is further limited to no more than occasional balancing, stooping, crawling, and climbing of ladders, ropes, or scaffolds, and only frequent kneeling, crouching, and climbing of ramps or stairs. In addition, the claimant must avoid concentrated exposure to extreme

>cold or heat, to fumes, odors, dusts, gases, or poor ventilation, and to workplace hazards such as moving machinery or unprotected heights.

(Tr. 22, Finding 5). The ALJ's residual functional capacity finding included no mental limitations. Relying on testimony by the Vocational Expert, the ALJ then determined that Plaintiff could perform her past relevant work as an informal waitress and dining room manager. (Tr. 29, Finding 6). Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 31, Finding 7). The ALJ continued, however, to make an alternative finding at step five. (Tr. 30-31). The ALJ found that—even if Plaintiff was unable to return to her past relevant work—there were jobs in significant numbers in the national economy that she could perform. (Tr. 30-31).

## IV. Standard of Review

This Court reviews the Commissioner's decision to determine if it is supported by substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). It is not this Court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up). The substantial evidence standard is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It requires "more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (internal quotations omitted).

Put another way, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it." *Phillips*, 357 F.3d at 1240 n.8 (internal quotations omitted). If, however, the ALJ's conclusion is unsupported by analysis and explanation, then the matter should be remanded for further proceedings. *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013). A reviewing court should not "merely rubber-stamp" an ALJ's decision and, instead, "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (internal quotations omitted).

## V.     Discussion

Plaintiff challenges the ALJ's decision on four grounds. In the first ground, Plaintiff argues the ALJ erred at step two by finding her mental health conditions to be non-severe impairments. She further argues the error was not harmless because the ALJ did not sufficiently account for Plaintiff's mental health conditions when making the residual functional capacity determination. (Doc. 18 at 4). The Court agrees.[2]

---

[2] Because the Court finds that Plaintiff's first assignment of error requires remand,

The second step of the five-step sequential evaluation process requires the ALJ to determine the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). This step is a "threshold inquiry" and "allows only claims based on the *most trivial* impairments to be rejected." *Schink*, 935 F.3d at 1265 (emphasis added). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Although somewhat counterintuitive, the standard for qualifying as a "severe" impairment is relatively low. *Corns v. Comm'r of Soc. Sec.*, No. 8:20-cv-2605, 2022 WL 2975102, at *3 (M.D. Fla. June 30, 2022). The Eleventh Circuit has said that "an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Schink*, 935 F.3d at 1265 (cleaned up).

---

it is unnecessary for the Court to address Plaintiff's other assignments of error. *See Demench v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (finding it unnecessary to address remaining issues because remanding on one issue); *see also Tammy C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00074, 2021 WL 9666636, at *13 n.26 (N.D. Ga. Sept. 30, 2021) (stating that "since remand is required for further proceedings that could impact the ALJ's assessment of the other issues raised…the Court need not address the remaining issues").

### A. The evidence in the medical record regarding Plaintiff's mental health.

The record establishes that Plaintiff has a history of mental health issues, which includes being diagnosed with bipolar disorder and depression. In May of 2016, she sought mental health services at the Apalachee Center—a mental health treatment facility in Tallahassee, Florida. When assessed at the Apalachee Center, Plaintiff reported anxiety, depression, and a need to be alone because "she has become very confrontational with people over the smallest of issues." (Tr. 994). Plaintiff reported receiving mental health treatment approximately nine years earlier. (Tr. 970). She further reported being taken to a mental health institution as a child for evaluation, and that her mother had bipolar disorder. (Tr. 971). After her initial assessment, it was determined that Plaintiff needed mental health treatment, and she was admitted to targeted case management.[3] (Tr. 981). Plaintiff was diagnosed with bipolar disorder, irritability and anger, major depressive disorder, and PTSD. (Tr. 1028-30).

During one visit, Plaintiff rated her anger as 10/10 and stated that her mind "won't shut off." (Tr. 969). The treatment provider noted Plaintiff was "agitated,"

---

[3] According to the *Florida Medicaid Mental Health Targeted Case Management Handbook*, Plaintiff's mental health provider had to certify that Plaintiff required services from the provider. Reasons for certification can include a persistent mental illness which requires "coordination of services to maintain or improve level of functioning." (Appendix J) (available at https://ahca.myflorida.com/medicaid/review/Specific/CL_07_070601_MH_Case_

8

"depressed, anxious, irritable," and "tearful for almost all of the interview." (Tr. 971). The provider determined Plaintiff's signs and symptoms were "consistent with bipolar," and she was prescribed Lithium.[4] (Tr. 973). At another visit, Plaintiff was described as "agitated some what" and having thoughts that "consisted of wanting to hurt people" who irritated her. (Tr. 980). Throughout the visit, Plaintiff was "crying and being fidgety." (Tr. 981). Although Plaintiff had initially been prescribed Lithium, she stopped taking it because of side effects. (Tr. 985). Her medication was then switched to Depakote.[5] (*Id.*). At another visit, Plaintiff was "anxious, angry" and "tearful." (Tr. 988). The provider stated that Plaintiff's anger had improved, but "she is tearful…and appears depressed." (Tr. 989). On another occasion, Plaintiff reported that her boyfriend had to recently stop her from going after someone who made a derogatory comment to her. (Tr. 1002).

Plaintiff's depressed and gloomy demeanor were also noted in her physical therapy records in the fall of 2016. (Tr. 588, 591). Moreover, Plaintiff's primary

---

Mgmt_ver2_2.pdf); *see also* F.A.C. § 59G-4.199 (incorporating *Florida Medicaid Mental Health Targeted Case Management Handbook*).

[4] Lithium is "used to treat mania that is part of bipolar disorder." *Lithium (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/lithium-oral-route/side-effects/drg-20064603?p=1 (last visited Dec. 17, 2022).

[5] Depakote is "a mood stabilizer medication" that is "approved for the treatment of mania associated with bipolar disorder." *Valproate (Depakote)*, National Alliance on Mental Illness, https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Valproate-(Depakote) (last visited Dec. 17, 2022).

care physician questioned Plaintiff about her depression symptoms in November 2016. Plaintiff described having little interest in pleasure or doing things and feeling down, depressed, or hopeless. (Tr. 550). She also reported trouble concentrating. (*Id.*).

Plaintiff was hospitalized for tachycardia, laryngitis, and wheezing in March 2017. (Tr. 500-26). The hospital records show Plaintiff had discontinued Depakote and Latuda.[6] (Tr. 506). Upon discharge from the hospital, Plaintiff was prescribed Lorazepam.[7] (Tr. 528). Other parts of the medical record show that at various points in 2017 and into 2018, Plaintiff experienced anxiety and depression. (Tr. 660, 667, 687, 928). In August 2018, the state agency medical examiner noted Plaintiff was tearful throughout her examination. (Tr. 962). Plaintiff reported to the examiner that she was angry every morning. (*Id.*). And in July 2019, Plaintiff's primary care doctor performed a depression screening test that showed Plaintiff had "severe depression." (Tr. 1460).

During the hearing before the ALJ, Plaintiff testified that she had been to the hospital recently because of a panic attack. (Tr. 19). She admitted to suffering from

---

[6] Latuda is "approved to treat bipolar depression in adults and children." Latuda, https://www.latuda.com/bpd/about-latuda.html (last visited Dec. 17, 2022).
[7] Lorazepam is "approved for the treatment of anxiety, insomnia, or sleep difficulty due to anxiety or stress." *Lorazepam (Ativan)*, National Alliance on Mental Illness, https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Lorazepam-(Ativan) (last visited Dec. 17, 2022).

depression (Tr. 64), and she "broke out into weeping" during the hearing. (Tr. 19). Plaintiff stated that she had discontinued mental health treatment in 2016, but she had recently re-entered treatment. (Tr. 58). At the time of the hearing, Plaintiff was taking the psychotropic medication Vraylar.[8] (Tr. 54). She stated that despite being on the medication, she continued to experience "[e]motional highs and lows." (*Id.*).

### B. The ALJ's finding that Plaintiff's mental health conditions were non-severe.

Although the ALJ recognized that Plaintiff had been diagnosed with bipolar disorder and depression, the ALJ concluded that those disorders were non-severe impairments because they "do[] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. 18). In reaching that conclusion, the ALJ considered the four areas of mental functioning set out in the disability regulations and in the Listing of Impairments—the so called "Paragraph B" criteria. (Tr. 18-20). The ALJ found that Plaintiff had "mild limitations" in all four areas.[9] (Tr. 19-20). The ALJ found that the medical record showed Plaintiff "did not exhibit any consistent and severe mental restrictions, signs,

---

[8] Vraylar "is approved in adults to treat depressive episodes that happen with bipolar I disorder (bipolar depression) and for the short-term (acute) treatment of manic or mixed episodes that happen with bipolar I disorder." Vraylar, https://www.vraylar.com/ (last visited Dec. 17, 2022).
[9] The four areas are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 19-20).

11

symptoms, or psychological findings that equated to significant limitations." (Tr. 18). The ALJ also pointed out that Plaintiff's symptoms improved on medication, but she had a history of medication noncompliance. (*Id*.). As support for her conclusion that the mental health issues were non-severe impairments, the ALJ relied on the opinions of two medical consultants from the Disability Determination Service. (*Id*.).

### C. Substantial evidence does not support the ALJ's determination that Plaintiff's mental health conditions were non-severe.

After reviewing the information in the medical record, the Court finds that substantial evidence does not support the ALJ's determination that Plaintiff's bipolar disorder and depression were non-severe impairments. As previously mentioned, the "severe impairment" standard is not a high hurdle to clear. This "threshold inquiry" only allows "claims based on the *most trivial* impairments to be rejected." *Schink*, 935 F.3d at 1265 (internal quotations omitted) (emphasis added). In other words, an impairment is non-severe "only if the abnormality is *so slight* and its effect *so minimal* that it would clearly not be expected to interfere with the individual's ability to work." *Id*. (internal quotations omitted) (emphasis added); *see also Stratton v. Bowen*, 827 F.2d 1447, 1452 n.9 (11th Cir. 1987) (explaining that severe impairment is "a de minimis requirement").

Plaintiff's bipolar disorder and depression cannot be fairly characterized as "trivial," "slight," or "minimal." The record shows Plaintiff was diagnosed by a

mental health practitioner with bipolar disorder and depression. The records from the Apalachee Center variously describe Plaintiff as angry, agitated, sad, tearful, and fidgety. Plaintiff reported wanting to hurt people who irritated her. Her condition was such that the Apalachee Center admitted Plaintiff for targeted case management. Further demonstrating that Plaintiff's mental health issues were not "trivial" is the fact that she was prescribed psychotropic drugs like Lithium, Depakote, and Vraylar (which she was taking at the time of the hearing). Those are serious medications that are used to treat serious mental health issues. It is hard to believe that a trained mental health practitioner would prescribe such medications to an individual who was experiencing a "trivial," "slight," or "de minimis" mental health issue.

The ALJ relied on the opinions of the Disability Determination Service medical consultants to support the conclusion that Plaintiff's mental health conditions were non-severe. (Tr. 19-20). But the medical consultants did not have the benefit of Plaintiff's mental health treatment records from the Apalachee Center when they rendered their opinions.[10] Because records from the primary source of Plaintiff's mental health treatment were not considered by the medical consultants, their opinions regarding Plaintiff's mental health issues are less persuasive. *See McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) (stating that the opinion of a

---

[10] It is undisputed that the Apalachee Center records were not obtained and submitted until near the time of the hearing before the ALJ. (Doc. 18 at 9).

"consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records" when rendering an opinion).

Moreover, substantial evidence does not support the ALJ's conclusion that Plaintiff's mental health issues resulted in only a "mild limitation" on her ability to interact with others. (Tr. 19). Plaintiff's mental health treatment records show that she was easily agitated, angry, had a bad temper, and had thoughts about harming people who irritated her. The ALJ's decision failed to consider or explain how those issues would have impacted Plaintiff's ability to interact with others. *See Henkel v. Comm'r of Soc. Sec.*, No. 20-14363-CIV, 2022 WL 2012421, at *6 (S.D Fla. May 23, 2022) (finding that the ALJ erred by determining that the plaintiff's bipolar disorder was a non-severe impairment and explaining that the ALJ failed to address the plaintiff's irritability and impulsiveness when concluding that he was "only mildly limited in his interactions with others").

The ALJ pointed out that Plaintiff had periods of time when she did not take her mental health medication. (Tr. 18). But, that does not render her impairment non-severe. Looking to *Schink*, the ALJ there highlighted that at times the plaintiff did not take the prescribed medication. 935 F.3d at 1267 n.10. That fact was unpersuasive to the Eleventh Circuit. *Id*. at 1267. Thus, Plaintiff's intermittent taking of her prescribed medications in this case is insufficient to support the ALJ's conclusion that her mental health issues were non-severe.

In defense of the ALJ's decision, the Commissioner appears to minimize Plaintiff's bipolar diagnosis by pointing to an examination where Plaintiff presented with "normal mood, thought processes and intact memory." (Doc. 23 at 6). That argument is unpersuasive and inconsistent with the entirety of the medical record. There are numerous places in the medical record where Plaintiff is variously described as agitated, irritable, anxious, depressed, angry, fidgety, tearful, and expressing a desire to hurt other people. (*See, e.g.*, Tr. 588, 962, 972, 980, 981, 985). Although the medical record shows Plaintiff's mental health was better on some occasions than others, such is the episodic nature of mental health conditions. As the Eleventh Circuit has recognized, the fact that an individual has "good days and bad days is to be expected" given the "episodic nature" of mental health issues. *Schink*, 935 F.3d at 1268.

At the end of the day, there is not substantial evidence to support a conclusion that Plaintiff's mental health issues were so "trivial" "slight" or "de minimis" that they could be fairly characterized as non-severe. In that respect, this case is analogous to *Schink*. The ALJ in *Schink* found the plaintiff's bipolar disorder was a non-severe impairment. *Id*. at 1264. Many of the ALJ's reasons for finding Plaintiff's mental health issues non-severe in the current case resemble those relied on by the ALJ in *Schink*. The Eleventh Circuit reversed the ALJ in *Schink*, finding that substantial evidence did not support the ALJ's determination that the plaintiff's

15

bipolar disorder was non-severe. It is difficult to read *Schink* and arrive at any conclusion other than that the ALJ erred in this case by finding Plaintiff's mental health issues to be non-severe.[11] *See generally Henkel*, 2022 WL 2012421, at *8 (relying on *Schink* to find the ALJ erred by categorizing the plaintiff's bipolar disorder as non-severe).

### D. The ALJ's error in finding Plaintiff's mental health issues to be non-severe was not harmless.

The conclusion that substantial evidence does not support the ALJ's finding that Plaintiff's mental health issues were non-severe does not end the discussion. When determining the residual functional capacity, an ALJ is required to consider "all impairments, severe and non-severe." *Schink*, 935 F.3d at 1268. Thus, the ALJ's non-severe impairment finding "could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [Plaintiff's] mental impairment when assessing [her] RFC, and reached conclusions about [Plaintiff's] mental capabilities supported by substantial evidence." *Id*. That did not occur here. Thus, remand is appropriate.

The residual functional capacity found by the ALJ includes no mental limitations. (Tr. 22). The ALJ discussed Plaintiff's mental health conditions twice

---

[11] In fairness to the ALJ, the Eleventh Circuit's decision in *Schink* was issued shortly before the ALJ's decision in this case. Thus, the ALJ very well may have been unaware of it at the time she issued her decision in Plaintiff's case.


at step four. (Tr. 23-24, 28). The ALJ first stated that Plaintiff "paradoxically alleged that she could not return to work essentially due to experiencing too much pain and anxiety, however her reported activities of daily living, conservative medication, and work history suggested that her mental health problems would not be work preclusive." (Tr. 23).[12] The daily activities identified by the ALJ, however, are what *Schink* described as "solitary activities." (Tr. 23); *Schink*, 935 F.3d at 1264. These activities do not account for the treatment records that show Plaintiff suffered from agitation, anger issues, depression, irritability, tearfulness, and at times harbored a desire to harm people who irritated her. Although Plaintiff had a gap in her mental health treatment, she was receiving treatment at the time of her hearing, she had recently been to the hospital for a panic attack, and she was taking a psychotropic medication (Vraylar). Nonetheless, the residual functional capacity fails to adequately consider any limitations resulting from Plaintiff's mental health conditions. *See Henkel*, 2022 WL 2012421, at *9 (explaining that the ALJ "provided no real assessment of how Plaintiff's mental impairments—including bipolar disorder—affected his ability to work"). Accordingly, the Court cannot find that the

---

[12] The ALJ pointed to the opinions of the state agency medical consultants as support for excluding any mental limitations in the residual functional capacity. (Tr. 28). But, as mentioned above, it is undisputed that the consultants did not have Plaintiff's mental health treatment records from Apalachee Center when they issued their opinions.

ALJ's determination that Plaintiff's mental health issues constitute a non-severe impairment was harmless error.

## VI.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS**:

1. **REVERSING** the Commissioner's decision and **REMANDING** this action to the Commissioner for further proceedings consistent with this opinion under sentence four of 42 U.S.C. § 405(g); and

2. Directing the Clerk of Court to close the case file.

At Pensacola, Florida, this 20th day of December 2022.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**